**RUSS, AUGUST & KABAT**
Marc A. Fenster, SBN 181067
mfenster@raklaw.com
Eric J. Carsten, SBN 232494
ecarsten@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Plaintiff and Counter-defendant
Ce Soir Lingerie Co., Inc. and Beverly Ann Deal

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CE SOIR LINGERIE CO., INC., a California Corporation, d/b/a FASHION FORMS, INC., d/b/a LINGERIE SOLUTIONS,<br><br>Plaintiff,<br><br>vs.<br><br>IMAGINE ENTERPRISES, LLC, a New York limited liability company,<br><br>Defendant. | Case No.: 2:11-cv-07291 DMG(FMOx)<br><br>[Assigned to The Honorable Dolly M. Gee, Courtroom 7]<br><br>**PLAINTIFF AND COUNTER-DEFENDANT CE SOIR LINGERIE CO., INC.'S MARKMAN SURREPLY BRIEF** |
| IMAGINE ENTERPRISES, LLC, a New York limited liability company,<br><br>Counter-claimant,<br><br>vs.<br><br>CE SOIR LINGERIE CO., INC., a California Corporation, d/b/a FASHION FORMS, INC., d/b/a LINGERIE SOLUTIONS; BEVERLY ANN DEAL, an individual; ROES 1-10;<br><br>Counter-defendants. | Original Complaint Filed: September 2, 2011 |

# INTRODUCTION

In its opening claim construction brief, Imagine attempted to rely on two alleged "experts" – the counter-claimant Ms. Cavosie, and the owner of a lingerie store, Ms. Carroll. Ce Soir took Ms. Cavosie's deposition regarding her declaration and claim construction opinions on August 14, 2012 (after Ce Soir had submitted its Responsive C Brief). Approximately one hour after Ce Soir deposed Ms. Cavosie, Imagine informed Ce Soir that it would withdraw Ms. Carroll's declaration and any reliance on her testimony; her deposition was cancelled. Tellingly, Ms. Cavosie's testimony at her deposition does not help Imagine with its proposed constructions—Ms. Cavosie's testimony further supported Ce Soir's arguments. Ce Soir respectfully submits this short Surreply Brief to inform the Court of Ms. Cavosie's testimony.

## I.  Ms. Cavosie Contradicted Imagine's Proposed Construction Of "Each Cup Is U-Shaped"

As a preliminary matter, Ms. Cavosie's definition of the phrase "each cup is U-shaped" is closer to Ce Soir's proposed construction than Imagine's. Ms. Cavosie, in her deposition, claimed that "U-shaped" means "an arcuate bottom with an open top *having the general appearance of the shape of the letter U.*" Ex. 1 at 32:10-12 (emphasis added)[1]; *see also* Cavosie Decl., ¶ 3. The letter U has two sides, with substantially straight upper portions that are substantially parallel. This matches the construction proposed by Ce Soir – "Each cup has a rounded bottom end and substantially straight parts extending down from the tops of the outer and inner sides of the cup that are substantially parallel to each other."[2]

---

[1] Excerpts of the transcript of the deposition of Ms. Tara Cavosie taken on August 14, 2012 are attached to this brief as Exhibit 1.

[2] Imagine's proposed construction of U-shaped as anything with an arcuate bottom and an open top end would include not only U-shaped cups, but any cup shaped as a semi-circle or a bowl. This is inconsistent with the plain and ordinary meaning of U-shaped, is contrary to the teaching of the patents, and is at odds with Imagine's "expert" – the named inventor on the patents.

Second, during her deposition, Ms. Cavosie admitted that, contrary to Imagine's proposed construction, U-shaped cups can have closed top portions:

> A. …Is it my opinion that a bra that is – a cup that is U-shaped can have a top portion that is closed, is that what you're asking me?
> Q. Correct.
> A. ***Yes, I think that's possible.***

Ex. 1 at 146:2-7 (emphasis added). If a U-shaped cup can have a closed top end, the construction of U-shaped cup cannot require an open top end. As Ce Soir has previously explained, Imagine's proposed construction also contradicts the claims of the patents themselves. Of the 45 claims in the three asserted utility patents, only four mention U-shaped cups.[3] Claim 2 of the '055 patent recites a U-shaped cup with "an open top end" and "a closed bottom end," while claim 9 recites a U-shaped cup with "a top end" and "a bottom end." Because claim 9 does ***not*** limit U-shaped cups to having only open top ends, there must be U-shaped cups that have closed top ends. Imagine's proposed construction would nullify this claim, violating a basic principle of claim construction. Ms. Cavosie's testimony confirms the error of Imagine's position.

## II. Ms. Cavosie Contradicted Imagine's Litigation-Driven Substitution Of Comparing Tangents Rather Than Upper Portions Of Sides Of Cups

Imagine's proposed construction of "an upper portion of the inner and outer sides are substantially parallel" fared no better in Ms. Cavosie's deposition. Rather than consider the closeness to parallel of the upper portions of the sides, as required by the claim, Imagine has proposed that "tangent lines" be drawn to the topmost point of the sides of the bra. This approach has no support in the claims,

---

[3] Because it is clear that the upper portions of the sides of the accused products are not "substantially parallel," Imagine has focused on the use of "U-shaped" cups in the hope that an expansive construction, unsupported by intrinsic or extrinsic evidence, may save its infringement theory. Imagine's description of the prominence of "U-shaped cups" in the claims has been less than accurate. *See, e.g.*, Imagine's Opening Markman Brief at 4-5 ("Many of the patent claims at issue recite that the bra cups are "u-shaped." As for the remaining claims at issue, each recites a bra cup that includes an inner and outer side, wherein the upper portions of these sides are 'substantially parallel' to each other."); Imagine's Markman Reply Brief at 12-13 ("Several of the asserted claims recite that the claimed bra cups include 'an outer side and an inner side, wherein an upper portion of the outer and inner sides are substantially parallel to each other.'").

3274-002 120821 Ce Soir Surreply Final

2

the specifications, or the file histories of the asserted patents. Ms. Cavosie's testimony confirms that Imagine's approach has been created for litigation purposes. Prior to this litigation, Ms. Cavosie had never used the term "tangent line" in her line of business, and she has never heard anyone else in the field of bra designs, clothing design, or undergarment design use the phrase "tangent line." Ex. 1 at 97:7-15.[4]

### III. Ms. Cavosie's Testimony Regarding "Substantially Parallel" Does Not Support Imagine's Positions

Ms. Cavosie's deposition testimony also offered Imagine no support for its position that "substantially parallel" can cover the diverging sides of the accused products in this case.[5]

As Ce Soir explained in its Responsive Brief, Imagine desires to stretch "substantially parallel" to includes cups that demonstrate divergence of the sides at angles of 20 degrees, 30 degrees, and even more – a position inconsistent with any intrinsic or extrinsic evidence. Ms. Cavosie's testimony, however, supports Ce Soir's position. For instance, Ce Soir asked Ms. Cavosie if the inner and outer sides of the cups of the following bra (discussed in the prosecution history of one of the asserted patents[6]) were substantially parallel:

---

[4] Allowing Imagine to draw tangent lines for comparison also appears to invite a healthy degree of error. Compare Ex. G of the Carsten Decl. (photocopy of the interior of the Go Bare Backless Strapless Bra, the basic model of the bra at issue in this litigation) to the "tangent lines" drawn on a picture of a model wearing the bra in Imagine's Reply Brief at 12.

[5] Ce Soir does **_not_** argue that substantially parallel means precisely parallel. "Substantially" or "nearly" parallel, however, cannot be stretched to cover cups with sides that diverge like the accused products.

[6] Ms. Cavosie claimed in her Declaration that she had reviewed the asserted patents and the prosecution histories for the asserted patents. Cavoise Decl., ¶ 2.



As measured, those sides diverge at approximately **6 degrees**. Ms. Cavosie was unwilling to state, however, as a purported expert in the field, that these sides were substantially parallel.

> Q. Are the upper portions of the inner and outer sides of the cups of this bra, as depicted in Figure 10, substantially parallel?
> A. I feel uncomfortable asking -- answering that question because I have not read this patent in years, and until I did read it and know the ins and outs of every single diagram, portion, figure of this patent, I would feel uncomfortable answering that question.

Ex. 1 at 109:11-21. Given that the patent is only two pages long, Ce Soir's attorney asked her to re-read it to re-familiarize herself with it, so he could ask her questions about it. She stated that even after reading it, she would not be able to provide any relevant opinion:

> A. Even if I read it right now, I don't – I would want to digest it, think about it before I gave you an opinion on specifically something you're asking me about. So I don't think even if I read it right now I would be able to give you something without putting some serious thought behind it.

*Id.* at 110:21-111:9. With various other images of brassieres from patents, Ms. Cavosie similarly expressed that she was "uncomfortable" answering questions without reading the patents themselves, despite Ce Soir's attorney's repeated insistence that he was asking solely about the figures. *See, e.g.,* Ex. 1 at 107:2-21, 160:21-161:10.

When asked the fundamental question of whether she had any understanding of how close to parallel the sides of a cup need to be to be "substantially parallel," Ms. Cavosie merely replied that it was a great question and she would need to look into that further:

> Q. Do you have an understanding of how close two lines need to be to parallel to be substantially parallel, as you understand that term?
> A. **That is a great question.** I definitely think I would have to look into that further to give you the appropriate answer.

*Id.* at 98:17-24.

The only clarity that Ms. Cavosie did provide was in opining that the upper portions of the sides of the Intrigue Bra were ***not*** substantially parallel. Ex. 1 at 49:7-12.[7] The Intrigue Bra appears on the left below; the accused product appears on the right. Based on Ms. Cavosie's own testimony, it is unclear how Imagine believes it may maintain its claims in good faith.

 

---

[7] "Q. Using your understanding of that phrase, as you gave in your Declaration, are the upper portions of the inner sides and the outer side of the left-hand cup in Exhibit 19 substantially parallel? A. I would say no." *Id.*

### IV. Ms. Cavosie Confirms That "Open Top End" Is Indefinite

Finally, Ms. Cavosie's deposition testimony confirms that the term "open top end" is indefinite. Ce Soir repeatedly attempted to obtain Ms. Cavosie's understanding of the term "open top end" during her deposition. Her answers (and the comment by Imagine's attorney) speak volumes:

> Q. Is the component, "An open top end," part of your definition of the term or phrase "Each cup is U-shaped," as it appears in the asserted patents?
> A. I say, "open top end," when I'm talking about U-shaped cups having an arcuate bottom with an open top.
> Q. And what do you mean by, "open top end"?
> *A. I mean it's open.*
> Q. Okay. What does it mean for a top end to be open?
> *A. It's open.*
> Q. What does it mean for a top end to be closed?
> *A. It's closed.*
> Q. Other than using the phrase, the terms, "open and closed," can you not describe for me what an open top end is versus what a closed top end is?
> *A. I might have to look into that a little bit further, but an open top end means open.*
> Q. What does "open" mean to you?
> *MR. DILGER: It's like asking her what "red" means.*
> *THE WITNESS: I don't – I mean, yeah. I don't -- I don't.*

*Id.* at 32:25-34:3. Ce Soir's attorney then attempted to obtain testimony on how Ms. Cavosie would describe the requirements of an "open top end" to others in the field (*e.g.*, a manufacturer). Ms. Cavosie again could provide no non-circular testimony:

> Q. Okay. So with respect to open top end, as you've used it, with respect to the asserted patents, how would you describe "open" to somebody that's not familiar with that term?
> *A. It's an open top end, meaning it's open*.
> Q. Okay. If you told a manufacturer, "I'd like an open top end on my bra," what would be the plain and ordinary meaning of that?
> *A. Make it open.*
> Q. Okay. And if the manufacturer says, "What does that mean? How do I cut the fabric? What do I construct?" how would you respond?
> *A. Well, I think there's a lot of factors that would come into play there so I wouldn't be able to give you a definitive answer on that.*
> Q. Does open top end have something to do with the shape of a cup?

> A. Yeah, because we're talking about cup -- the U-shaped cups that have an arcuate bottom and an open top end.
> *Q. What is the structure of the cup that makes the top end open?*
> *A. It has an arcuate bottom and an open top end. And having the general appearance of the letter U.*

*Id.* at 36:4-38:2. Considering that Imagine's purported "expert" is the *named inventor*, the fact that she repeatedly could not provide any information or understanding of the term "open top end" is particularly damning.

Ms. Cavosie's later testimony in the deposition, to the extent it shed any light on the term at all, again supported Ce Soir's alternative proposal (a construction that "the top edge of the bra cup permits a portion of the wearer's breast to be exposed while the bra is worn"), not Imagine's. Regarding one example shown to Ms. Cavosie, she claimed that the top end was closed. When asked what makes it closed, she replied: "Because no top portion of the breast is showing through the – is protruding from the cup." *Id.* at 40:10-12. At another point, regarding a different example, she also suggested that whether a cup "curled inward" related to its status as an "open top end": "It doesn't have an open top end because the upper portion of the breast is not exposed, and as you can see, *it's curled inward*. Curls inwards and almost (Indicating). Q. And almost? A. Period. It curves inward, period. Sorry." *Id.* at 66:20-67:4. After repeated attempts to ask Ms. Cavosie a follow up question on this notion of "curled inward" (and numerous improper objections and directions from Imagine's attorney to "move on"), she ultimately again noted that this too was a "great question" and she would need to look into it:

> Q. I'm asking for your expert opinion regarding open top end in which you purport to provide an opinion in litigation against my client, and I'm asking whether or not a cup curls inward at the top relates to your definition of an open top end?
> A. **That's a great question** and I think I would have to research it a little bit further to give you a proper answer.

*Id.* at 70:10-22.

Finally, Ms. Cavosie's numerous refusals during her deposition to comment on whether the pictures of undergarments shown to her at her deposition demonstrated "open top ends" cements the conclusion that the term is indefinite, as it could not be applied by the named inventor.

For example, U.S. Patent No. 3,934,593 to Mellinger is discussed in the asserted patents. Shown a figure from the Mellinger patent, Ms. Cavosie would not agree that the figure showed cups with open top ends:



Q. As applied, would this have an open top end?
A. It's – An open top end what? ***It's not a cup***.

*Id.* at 77:11-14. This is despite the fact that Ms. Cavosie's own patents describe the "***cups***" of the Mellinger patent.[8] Ms. Cavosie was also asked about the following undergarment:

---

[8]Also, as discussed at the deposition, the Mellinger patent states: "The tabs 12 are then pulled upward with the thumb and forefinger and pressed into position of maximum shaping and uplift. The narrow border 14 will naturally follow the contour of the breast just below the nipple and form foam cushion 16 *into a cup*." (emphasis added). Note that Imagine's Reply Brief, instead of drawing tangent lines of the cup that is created when the device of Mellinger is applied, draws tangent lines of the breast support lying flat. Reply at 8.

3274-002 120821 Ce Soir Surreply Final     8

RUSS, AUGUST & KABAT



When asked if the cups had "open top ends," Ms. Cavosie could not answer, blaming in part the lack of the breasts in the diagram. *Id.* at 127:11-18. When asked what she would for look with respect to the breasts in relation to the bra, she replied: "Well, you're asking me to conjure up an opinion of something that doesn't exists. I can't do that. I would need to see the breasts and the bra illustrated on the breasts, and there is no such thing so I can't answer that question accurately." *Id.* at 128:5-12. Ms. Cavosie was then asked about undergarments that specifically demonstrate the positioning of the cups on the breasts. For instance, Ce Soir asked if Ms. Cavosie would consider the cups of the following undergarment from U.S. Patent No. 494,397 to have "open top ends":



Again, Ms. Cavosie claimed that she could not comment and stated that this undergarment, in her eyes, did not have cups:

> Q. Just with respect to the undergarments shown in Figure 1, in your expert opinion would this undergarment reflect an open top end?
> A. *An open top end what?*
> Q. Do the cups of the undergarment in Figure 1 have open top ends?
> A. *They don't look like cups to me.*

*Id.* at 120:4-11.

The inability of the named inventor, at a deposition for which she was designated as an expert, to either articulate what an "open top end" means or to apply her understanding to various undergarments, reinforces the conclusion that the term is indefinite. If, however, the Court finds that the term is susceptible to a meaning, it clearly cannot be the construction provided by Imagine – none of the limited snippets of testimony Ms. Cavosie provided (given after countless circular explanations of "open top end" meaning "it's open") suggest the construction Imagine provides.

## CONCLUSION

For all of the reasons above and in its Responsive Claim Construction Brief, Ce Soir respectfully requests that the Court adopt Ce Soir's proposed constructions of the disputed claim terms.

DATED: August 21, 2012

RUSS, AUGUST & KABAT
Marc A. Fenster
Eric J. Carsten


By: _____*/s/ Eric J. Carsten*_____
Eric J. Carsten
Attorneys for Plaintiff and Counter-defendant Ce Soir Lingerie Co., Inc. and Counter-defendant Beverly Ann Deal